IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division



**CICELY TUCKER,**

        Petitioner,

v.                                    CRIMINAL NO. 2:17-cr-87

**UNITED STATES OF AMERICA,**

        Respondent.

*MEMORANDUM OPINION AND ORDER*

Before the Court is Cicely Tucker's ("Petitioner") Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). ECF Nos. 46, 49.

**I. FACTUAL AND PROCEDURAL HISTORY**

From 2013 to 2015, Petitioner operated a scheme to prepare dozens of fraudulent tax filings. To perpetrate her fraud, Petitioner collected information from her unwitting clients and prepared their returns. Next, Petitioner concocted fictitious expenses to decrease her clients' purported tax obligations, thus increasing the size of their refunds. Petitioner charged a 10% fee on her clients' refunds and brought in at least $39,000 for herself. In total, Petitioner's scheme caused a tax loss of $674,343 over three tax years.

Petitioner was named in a single count Criminal Information on May 30, 2017. ECF No. 2. On July 22, 2017, Petitioner waived Indictment and pleaded guilty to Count 1, Aiding and Assisting in Preparation of False Tax Returns, in violation of 26 U.S.C. § 7206(2). ECF Nos. 4– 7. On October 18, 2017, Petitioner was placed on probation for a term of 3 years, to include a special condition of 24 months on home detention. ECF Nos. 18–20. During Petitioner's probation term, the probation officers supervising her filed petitions with the Court on three separate occasions. ECF Nos. 21, 27, 31. These petitions contained seven separate allegations

that Petitioner violated her probation, including a new criminal conviction in state court and multiple instances of new financial fraud. *Id.* On September 26, 2019, the Court held a hearing on Petitioner's probation, but she failed to appear and a bench warrant was issued for her arrest. ECF No. 32, 33. On November 13, 2019, Petitioner was arrested in Illinois. ECF No. 39. On January 2, 2020, a new petition was filed, documenting the violations associated with Petitioner's failure to appear for the September 26 hearing, her flight to Illinois, and an active arrest warrant for her arrest issued by the Virginia Beach Police Department. ECF No. 41. On January 8, 2020, the Court held a second hearing on Petitioner's probation. ECF No. 42. The Court found Petitioner in violation of the conditions of her probation and sentenced her to 18 months in the Bureau of Prisons. ECF No. 43.

Petitioner filed her *pro se* letter motion seeking compassionate release on June 5, 2020. ECF No. 46. The Court ordered the appropriate responses on June 12, 2020. ECF No. 47. Petitioner, through counsel, responded to the Court's Order on July 10, 2020. ECF No. 49. On July 30, 2020, the Government responded in opposition. ECF No. 52. Petitioner, through counsel, replied to the Government's response on August 5, 2020. ECF No. 55. Since the Court's July 10, 2020 Order, Petitioner has written at least two letters requesting release from the custody of the Bureau of Prisons. *See e.g.* ECF No. 53. This matter is ripe for disposition.

## II. LEGAL STANDARD

### A. The Exhaustion Requirement

A district court may modify a petitioner's sentence "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons ("BOP") to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

Accordingly, a petitioner seeking compassionate release is generally required to exhaust his or her administrative remedies prior to bringing a motion before the district court. *Id.*; *see also Coleman v. United States*, 2020 WL 3039123, at *3–*4 (E.D. Va. June 4, 2020) (discussing the reasons "judicial waiver of the exhaustion requirement is permissible in light of the extraordinary threat certain inmates face from COVID-19").

### B. The Compassionate Release Standard

As amended by the FIRST STEP Act, a court may modify a term of imprisonment on the motion of the petitioner after considering the factors set forth in 18 U.S.C. § 3553(a) if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). "Extraordinary and compelling reason" was previously defined by the United States Sentencing Commission ("Sentencing Commission") in U.S.S.G. §1B1.13, Application Note 1. Before the passage of the FIRST STEP Act, the Sentencing Commission provided that a sentence may be modified due to the petitioner's medical condition, age, or family circumstances and further defined the limits under which a sentence reduction may be given under those justifications. U.S.S.G. §1B1.13, n. 1 (A)–(C). The Sentencing Commission also provided a "catch-all provision" that allowed for a sentence modification upon a showing of "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* at n. 1 (D). Use of the "catch-all provision" prior to the FIRST STEP Act was severely restricted because it required approval from the Bureau of Prisons before an individual could petition the district court for relief. *Id.*

However, U.S.S.G. §1B1.13 is now outdated following the passage of the FIRST STEP Act, which allows individuals to petition the district court directly without clearance from the Bureau of Prisons. Therefore, U.S.S.G. §1B1.13 is merely advisory and does not bind the

3

Court's application of § 3582(c)(1)(A). *McCoy v. United States*, 2020 WL 2738225, at *4 (E.D. Va. May 26, 2020); *see also United States v. Lisi*, 2020 WL 881994, at *3 (S.D.N.Y. Feb. 24, 2020) ("[T]he Court may independently evaluate whether [petitioner] has raised an extraordinary and compelling reason for compassionate release ... [but § 1B1.13's policy statement] remain[s] as helpful guidance to courts...."); *United States v. Fox*, 2019 WL 3046086, at *3 (D. Me. July 11, 2019) ("[T]he Commission's existing policy statement provides helpful guidance on the factors that support compassionate release, although it is not ultimately conclusive"). A petitioner's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t). In sum, the Court may consider a combination of factors, including but not limited to those listed in U.S.S.G. §1B1.13, in evaluating a petitioner's request for a sentence modification under 18 U.S.C. § 3582(c)(1)(A)(i).

### III. DISCUSSION

#### A. The Exhaustion Requirement

This Court has previously held that the exhaustion requirement within § 3582(c)(1)(A) may be waived in the midst of the COVID-19 pandemic. *See supra* Part II.A; *Coleman v. United States*, 2020 WL 3039123, at *3–4 (E.D. Va. June 4, 2020). Accordingly, the Court waives the exhaustion requirement in this case, as Petitioner cites the COVID-19 pandemic as part of her argument for release.

#### B. Resolution of the Defendant's Request for Compassionate Release

*1. Consideration of the Factors Listed in 18 U.S.C. § 3553(a)*

The Court begins its analysis of the § 3553(a) factors with the notation that Petitioner had the opportunity to resolve her obligations to the law without serving any time in the custody of the Bureau of Prisons. Unfortunately, a cursory examination of Petitioner's case file

demonstrates a lack of respect for the law and contempt for the judicial process. *See* 18 U.S.C. § 3553(a)(2)(A). After receiving a sentence of probation for an offense carrying a restricted guidelines range of 30–36 months, Petitioner continued to prepare tax returns, failed to submit supervision reports to her probation officer, and was convicted of a misdemeanor offense in state court. *See* ECF No. 48 at 23 (listing the restricted guideline range for Petitioner's original offense); ECF Nos. 21, 27. Worse yet, Petitioner compounded her initial violations by failing to appear at the hearing on the status of her probation on September 26, 2019 and absconding to Illinois. ECF No. 32, 39. Although the Government did not pursue the probation officer's allegation that she used stolen credit card information to accumulate $3,400 in fraudulent charges, there is still an active arrest warrant for this alleged conduct. ECF No. 41. Petitioner's maladjustment to her probation demonstrates that she was undeterred by her conviction for preparing fraudulent tax returns. 18 U.S.C. § 3553(a)(2)(B). Further, the public must be protected from Petitioner's pattern of fraudulent financial activities. *Id.* § 3553(a)(2)(C); *see also* ECF No. 48 at ¶ 12 ("the defendant's clients are liable for their underpaid taxes/receipt of refunds [for which] they were not entitled"). Accordingly, the Court finds that the purposes of Petitioner's 18 month sentence for violating the terms of her probation remain unfulfilled.

*2. Consideration of U.S.S.G. § 1B1.13(2)*

The Court is also advised against grants of compassionate release when the petitioner is a danger to the safety of any person or to the community. *See* U.S.S.G. § 1B1.13(2). This advisement extends to facially nonviolent offenders who still present a substantial threat of recidivism. *Dinning v. United States*, 2020 WL 1889361, at *3 (E.D. Va. Apr. 16, 2020) (denying compassionate release because the petitioner "poses an ongoing danger to the community" based on his stated desire to return to the same positions of trust that facilitated his

offense). Here, Petitioner's conduct while serving her term of probation presents an unacceptable risk of further financial impropriety if she is granted a reduction. *See supra* Part III.B.1 (discussing Petitioner's probation violations for preparing tax returns and the pending allegation that she engaged in credit card fraud). Simply characterizing Petitioner as a nonviolent offender understates the persistence of her criminal conduct and diminishes very real harm that is inflicted on victims of financial fraud. When considered together, these factors indicate that Petitioner is still capable of inflicting harm on the public and triggers the advisement provided within U.S.S.G. § 1B1.13(2).

*3. Lack of Extraordinary and Compelling Reason*

In her *pro se* filings, Petitioner references her desire to take care of her son as the reason for her request for a sentence reduction. *See e.g.* ECF No. 46 at 2 (proffering that "my son is in trouble" and that his caregiver is ill equipped to "handle his frequent tantrums and violent rages"). A subsequent letter from Petitioner reiterates her "urgency to return to my son."

The Sentencing Commission advises that a petitioner may receive a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i) upon "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children." U.S.S.G. § 1B1.13, n. 1(C)(i). In this case, Petitioner expresses the subjective desire to raise her son without explaining why his current caregiver is incapable of providing for him. Her Presentence Report lists other family members who can care for her son during the balance of her sentence, should his current caregiver be deemed unsuitable. ECF No. 48 at ¶¶ 48, 50. Further, the Court is concerned that without a sentence that adequately deters Petitioner from further criminal conduct, she will be unable to provide a suitable environment for childrearing on top of the likelihood of recidivist behavior that would take her away from her son once again. *See* ECF No. 46 at 2 (admitting that Petitioner turned to

alcohol to process her conviction, worsening its consequences for herself and her son). Therefore, the Court denies Petitioner's request for a reduction under the advisement of U.S.S.G. § 1B1.13, n. 1(C)(i).

In her filings made through counsel, Petitioner focuses on the threat presented by the ongoing pandemic in support of her request for compassionate release. Courts may grant compassionate release to individuals who are vulnerable to serious illness or death if infected with COVID-19. *See Turner v. United States*, 2020 WL 4370124, at *2 (E.D. Va. July 30, 2020) ("the Court considers the growing evidence of the BOP's chronic mismanagement of its vulnerable population during the COVID-19 pandemic"); *see e.g. Bruno v. United States*, 2020 WL 4192282 (E.D. Va. July 16, 2020) (granting compassionate release based, in part, on the petitioner's underlying health conditions that made him particularly susceptible to a COVID-19 infection); *Woodard v. United States*, 2020 WL 3528413 (E.D. Va. June 26, 2020) (granting compassionate release due to the petitioner's unique vulnerability to COVID-19). However, a such a request for compassionate release must be supported by medical records that show a heightened risk of severe illness or death. *Zellner v. United States*, 2020 WL 3803031, at *3 (E.D. Va. July 7, 2020).

Petitioner is 44 years old and offers no underlying health conditions or medical records in support of her request for compassionate release. *See* ECF No. 48 at ¶ 52 ("[t]he defendant reported her overall general health is good"). Petitioner also reports self-directed improvements in her physical health during her incarceration, which are to be commended. ECF No. 46 at 3. However, there is nothing to indicate she is particularly susceptible to COVID-19 and the Court declines to exercise its discretion to grant her request for a sentence reduction.

## IV. CONCLUSION

For the foregoing reasons, Petitioner's Motion is **DENIED**.

The Clerk is **DIRECTED** to send a copy of this Order to the Petitioner, the United States Attorney, the United States Probation Office, the Federal Bureau of Prisons, and the United States Marshals Service.

**IT IS SO ORDERED.**

Norfolk, Virginia
August 14, 2020

Raymond A. Jackson
United States District Judge